UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
ANA PEREZ,                                                 :
                                                           :        Civil Docket No.  20-CV-04081
                      Plaintiff,                           :
                                                           :        COMPLAINT
              - against -                                  :
                                                           :
SUNRISE MEDICAL, P.C., SERGIO A.                           :
MARTINEZ, M.D., AND LUCELIDA OSORIO,                       :
                                                           :
                      Defendants.                          :
                                                           :
------------------------------------------------------------ X

## NATURE OF THE ACTION

1.      Plaintiff Ana Perez ("Ms. Perez" or "Plaintiff") brings this action against Defendants Sunrise Medical, P.C., Sergio A. Martinez, and Lucelida Osorio ("Ms. Osorio"), collectively "Defendants" to seek redress for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), New York Labor Law ("NYLL") Articles 6 and 19, § 190 *et. seq.* and § 652 and applicable regulations, 12 NYCRR § 142 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*

2.      Ms. Perez worked for approximately two years as a medical assistant and phlebotomist at Defendants' medical clinic. Despite Ms. Perez regularly working between and 52.5 and 61 hours per week, Defendants unlawfully failed to pay Ms. Perez any wages for hours worked over forty in a week and prohibited her and others from accurately reporting her actual hours worked. Defendants also failed to provide Ms. Perez with legally required hiring notices and wage statements.

3.      In addition, when Ms. Perez developed a medical condition affecting her eyesight that required regular medical treatment, Defendants began to treat her poorly, accusing her of

1

under-performing and scrutinizing any absences from work. After Ms. Perez requested approximately five weeks of doctor-prescribed time off to undergo and recover from eye surgery, Defendants insisted that she must return to the job within two weeks of her surgery. When Ms. Perez was unable to return to work so soon, Defendants fired her, and refused to pay her for her last two days of work.

4.     Ms. Perez brings this action to remedy Defendants' failure to pay her for all hours worked, in violation of the FLSA and NYLL, and their failure to provide her with hiring and wage statements pursuant to the NYLL and applicable regulations.

5.     Ms. Perez also brings this action to remedy Defendants' failure to engage in a cooperative dialogue concerning her request for a reasonable accommodation and failure to accommodate her disability, as well as her illegal firing, in violation of the NYCHRL.

6.     Ms. Perez seeks declaratory relief, unpaid wages for work performed, liquidated and statutory damages, and other appropriate relief pursuant to the FLSA and NYLL. In addition, Ms. Perez seeks declaratory relief, compensatory and punitive damages and all other appropriate relief pursuant to the NYCHRL. Ms. Perez also seeks reasonable attorney's fees, costs, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Ms. Perez's FLSA claims set forth herein pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617 and 29 U.S.C. § 216(b) because this claim involves federal questions regarding the deprivation of her rights under federal law.

8.     This Court has supplemental jurisdiction over the NYLL and NYCHRL claims set forth herein pursuant to 28 U.S.C. § 1367, because these claims closely relate to the federal claim

under the FLSA, having arisen from a common nucleus of operative facts, such that they form part of the same case or controversy.

9.      Defendants are subject to jurisdiction in New York because Defendant Sunrise Medical is a New York medical practice, with its principal place of business at 4039 Junction Blvd., Corona, New York 11368. Defendants Osorio and Martinez are subject to jurisdiction in New York because, upon information and belief, they reside in and conduct business in New York State.

10.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within the Eastern District of New York and because Defendants operate their business therein.

## PLAINTIFF'S COMPLIANCE WITH ADMINISTRATIVE FILING REQUIREMENTS

11.      Contemporaneously by filing this Complaint, Ms. Perez is serving a copy of the same upon the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the requirements of Section 8-502(c) of the New York City Administrative Code.

## PARTIES

### Plaintiff

12.      Plaintiff Ana Perez ("Ms. Perez") is a single mother who lives in Jackson Heights, New York, with her 11-year-old daughter.

13.      Ms. Perez worked for Defendants as a medical assistant and phlebotomist for approximately two years, from May 2017 until she was unlawfully fired in May 2019.

14.      At all times relevant and material to this action, Ms. Perez was Defendants' employee within the meaning of the FLSA, NYLL, and NYCHRL.

**Defendants**

*Sunrise Medical, P.C.*

15.     Defendant Sunrise Medical, P.C. ("Sunrise Medical") is a New York group medical practice specializing in internal medicine and pulmonary disease, with its principal place of business at 4039 Junction Boulevard, Corona, New York 11368.

*Sergio A. Martinez*

16.     Upon information and belief, Defendant Sergio A. Martinez ("Dr. Martinez") is a Pulmonologist employed by Sunrise Medical as medical director, and his usual place of business is 4039 Junction Boulevard, Corona, New York 11368.

17.     Dr. Martinez is sued in his individual capacity as Ms. Perez's employer.

*Lucelida "Lucy" Osorio*

18.     Upon information and belief, Defendant Lucelida "Lucy" Osorio ("Ms. Osorio") is a facility director at Sunrise Medical, and her usual place of business is 4039 Junction Boulevard, Corona, New York 11368.

19.     Ms. Osorio is sued in her individual capacity as Ms. Perez's employer.

20.     At all times relevant and material to this action, each Defendant was Ms. Perez's employer within the meaning of the FLSA, NYLL and NYCHRL.

21.     As set forth below, and at all times relevant and material to this action, Ms. Osorio and Dr. Martinez oversaw operations at Sunrise Medical and made material decisions concerning the businesses' day-to-day operations, including those concerning pay practices and personnel decisions.

22.     At all times relevant and material to this action, each Defendant had the power to hire and fire Ms. Perez, control the terms and conditions of her employment, maintain employment records, and determine the rate and method of any compensation provided to her.

23.     Upon information and belief, Defendant Sunrise Medical constitutes an enterprise engaged in commerce whose gross annual revenue is at least $500,000.

24.     Upon information and belief, and as more fully set forth below, Ms. Perez regularly handled goods and materials that moved in commerce and originated out of state.

## STATEMENT OF FACTS

25.     Defendants hired Ms. Perez as a medical assistant and phlebotomist to work at Sunrise Medical in or around May 2017.

26.     Ms. Osorio managed all aspects of Sunrise Medical's business. She was present at Sunrise Medical's offices every day except for Saturdays. She hired and fired employees and was responsible for managing employees' scheduling and payroll. In addition, along with Dr. Martinez, she developed policies and procedures concerning pay practices. Ms. Osorio regularly stated to the staff that she was the person in charge of the business and referred to herself as "the boss."

27.     Ms. Osorio regularly supervised and directed Ms. Perez's work. She hired Ms. Perez and trained her for the job, including demonstrating Sunrise Medical's procedures in the medical laboratory, and explaining how to use the business' computer program for maintaining medical records. Ms. Osorio also informed Ms. Perez what her schedule would be and determined when she needed to stay at work late. If Ms. Perez needed to take any time off for illness or vacation, she was required to get permission from Ms. Osorio.

28.     Along with Ms. Osorio, Dr. Martinez regularly supervised and directed Ms. Perez's work as a medical assistant. She took direction from him during patient visits, including performing any follow-up tasks as directed by him. It was Dr. Martinez who set Ms. Perez's hourly rate of pay upon her hiring, and later decided to raise her pay. Dr. Martinez hired and fired employees, and developed policies and procedures concerning pay practices.

*Ms. Perez's Job Duties, Schedule, and Pay*

29.     As a medical assistant, Ms. Perez's responsibilities included, but were not limited to: performing triage for patient visits, including registering new patients, confirming insurance coverage, taking vital signs, confirming medical authorizations, evaluating medical history, and interviewing patients concerning any symptoms or concerns. She was also responsible for scheduling patient appointments, and sometimes covering the front desk.

30.     As a phlebotomist, Ms. Perez's regular duties included, but were not limited to, drawing patients' blood and preparing blood samples for medical testing.

31.     Defendants regularly required Ms. Perez to perform additional manual work, such as cleaning the office and the storage areas in the back. Ms. Osorio also required Ms. Perez to come with her during business hours to run personal errands, like shopping or going to the bank.

32.     When she was hired, Ms. Osorio informed Ms. Perez that her schedule would be from 9 a.m. to 5 p.m., Monday through Friday, with a thirty-minute lunch break. In addition, she would work from 9 a.m. to 12 p.m. on Saturdays.

33.     Instead, Defendants regularly required Ms. Perez regularly to work Monday through Friday from 9 a.m. until 7 or 8 p.m., and from 9 a.m. until 2 or 3 p.m. on Saturdays. In addition, she rarely was able to take a thirty-minute lunch break.

34.     Accordingly, despite being scheduled for only 40.5 hours of work, Ms. Perez regularly worked between 52.5 and 61 hours per week.

35.     Dr. Martinez set Ms. Perez's hourly rate at $12 per hour at the start of her employment and raised it to $15 per hour in or around January 2018.

*Defendants' Illegal Underpayment Policy*

36.     Throughout her employment, Defendants maintained a policy that employees were not to be paid for any hours worked over forty in one week.

37.     Accordingly, notwithstanding the fact that she regularly worked between 52.5 and 61 hours per week, Ms. Perez was only paid for forty hours of work per week.

38.     It was understood among Sunrise Medical staff that, regardless of whether they worked overtime, employees were required to punch in at 9 and out at 5, so that their hours would be capped at forty per week.

39.     Ms. Osorio regularly reminded Sunrise Medical employees of this policy and would say "if you don't punch, you don't get paid."

40.     When Ms. Osorio and Dr. Martinez decided that staff were not properly clocking in and out, on or around February 6, 2019, they distributed to Sunrise Medical employees a written memorandum, memorializing the punch clock policy.

41.     The memorandum stated that employees were to punch in at 9 a.m. and out at 5 p.m. In addition, it stated:"[a]ll employees are demanded to work no more than 40 hours per week or 80 hours per payroll and take 30 mts lunch every single day, if you don't do it the system do the adjustment for your lunch [*sic*]."

42.     The memorandum also stated that "any employee that fail or missing any punching **WON'T** be paid for the day or the or the hours you are missing [*sic*]." (emphasis in the original).

43.     Ms. Osorio and Dr. Martinez each placed their initials next to their printed names on that memorandum. On the day that they distributed the memorandum, Ms. Perez recalls that Dr. Martinez reiterated what Ms. Osorio liked to tell staff, saying "if you don't punch, you don't get paid."

44.     A copy of the memorandum is attached to this Complaint as Exhibit A.

45.     Throughout her employment, Ms. Perez was regularly required to work through her lunch break.

46.     Defendants issued bi-weekly paystubs to Ms. Perez that listed her regular hourly rate of pay, but inaccurately reflected her hours worked. For example, under "Current Hours," her paystubs never listed more than forty hours per week. Defendants did not list any overtime rate of pay on her paystubs.

47.     At one point during her employment, the punch clock stopped working, and Ms. Perez was unable to punch in or out for a two-week period. As a result, Defendants delayed in paying Ms. Perez for her work.

*Failure to Reimburse Ms. Perez for Uniform and Other Sunrise Medical Purchases*

48.     During her employment with Defendants required Ms. Perez to cover the costs of her uniforms, totaling $300 ($60 apiece, with five uniforms purchased, in five different colors, as required by Ms. Osorio). Ms. Osorio also required Ms. Perez to purchase a blood pressure machine for $45.

49.     Defendants did not reimburse Ms. Perez for her purchase of these items. As a result, in the weeks she was required to purchase them, Ms. Perez's wages fell below the state statutory minimum wage.

50.     Upon information and belief, throughout her entire employment at Sunrise, Ms. Perez regularly handled goods and materials that moved in interstate commerce and that originated out of state. For example, Ms. Perez regularly used syringes to draw blood, plastic bags to collect biomedical waste, wore a company-specified uniform to work every day, and operated a blood pressure machine.

*Ms. Perez Develops a Medical Condition Requiring Regular Doctor's Visits*

51.     Ms. Perez was good at her job and performed her duties well throughout her employment. She did not receive any written or verbal discipline.

52.     However, the work environment at Sunrise Medical was often challenging, because of Ms. Osorio was prone to losing her temper and becoming verbally abusive when she was unhappy. She regularly yelled at employees and would insult them with names like "retards." As a result, Ms. Perez tried not to do things to run afoul of Ms. Osorio's temper.

53.     Even so, Ms. Osorio began to specifically target Ms. Perez in or around 2018, when Ms. Perez began to experience blurry vision in her eyes.

54.     Ms. Perez visited a doctor who diagnosed her with glaucoma. He prescribed regular injections as part of her care.

55.     To receive the injections, Ms. Perez would need to miss a couple of hours of work every two weeks.

56.     When Ms. Perez asked Ms. Osorio for time off to receive medical treatment, Ms. Osorio appeared visibly irritated, and she told Ms. Perez that she could not miss work too often.

57.    Even though Ms. Perez said she would try to schedule her appointments in the morning so that she would miss very little work, Ms. Osorio asked Ms. Perez to make her appointments on her day off. This was not possible, because Sunday was Ms. Perez's only day off, and there were no Sunday appointments. When Ms. Perez told her that there were no Sunday appointments, Ms. Osorio insisted again that she schedule her appointments around her work schedule.

58.    Every time Ms. Perez received an injection, she would submit a doctor's note to Ms. Osorio. Even so, Ms. Osorio often insisted on additional verification.

59.    Several times, Ms. Osorio insisted that Ms. Perez move a scheduled appointment to a different day so that Ms. Osorio could accompany Ms. Perez to her appointment. On those occasions, Ms. Osorio claimed that she also needed to have her eyes seen and suggested that they could go together. On one occasion, Ms. Perez did comply and allowed Ms. Osorio to accompany Ms. Perez to one of her appointments.

60.    Because of Ms. Osorio's hostile reaction to Ms. Perez's initial requests for time off and her scrutiny of any time Ms. Perez did take, Ms. Perez did not feel that she could go to her appointments as often as the doctor recommended. She needed her job and was worried about upsetting Ms. Osorio. As a result, Ms. Perez infrequently went for the injections that she needed.

61.    Ms. Perez also required laser treatments, separate from the injections. She was required to receive these treatments about once a month, and would miss one or two hours of work for those appointments. Like with the injections, Ms. Osorio seemed annoyed by Ms. Perez's requests for time off, even though Ms. Perez provided Ms. Osorio with doctor's notes verifying her appointments.

62.     During this time period, Ms. Osorio became increasingly irritated by Ms. Perez's need for time off. On several occasions, Ms. Osorio told Ms. Perez that she had to choose between her health or her job.

63.     On or around April 16, 2019, Ms. Perez approached Ms. Osorio because she wanted to speak to her about her medical condition, and address Ms. Osorio's treatment of her.

64.     Ms. Perez told Ms. Osorio that she had noticed that Ms. Osorio seemed unhappy with her. She acknowledged that she had missed work recently and explained that it was because of a medical condition she would not wish on anyone. Ms. Perez also noted that she lived paycheck-to-paycheck and was worried that Ms. Osorio's criticisms of her meant that Ms. Osorio was going to fire her.

65.     During that conversation, when Ms. Perez specifically asked Ms. Osorio if there was something wrong, Ms. Osorio responded with a statement to the effect that she wanted "production." She told Ms. Perez that her production was not at "one hundred percent," and noted that some of the younger staff could work more quickly. Although she also told Ms. Perez to "do her best" and not try to compete with others, she went on to compare Ms. Perez to younger, quicker workers, with whom Ms. Osorio noted Ms. Perez "was not able to compete."

66.     The conversation with Ms. Osorio made it clear to Ms. Perez that Ms. Osorio did not believe she was capable of doing her job well because of her eye condition, her age, and her need for medical treatment.

*Defendants Threaten to Fire Ms. Perez if She Does not Return to Work Within Two Weeks of Undergoing Eye Surgery*

67.     Ms. Perez's eye condition worsened with time. In or around April 2019, she started seeing blood in her vision that blocked her line of sight.

68.     Ms. Perez's doctor diagnosed her with a retinal condition called "Vitreous Hemorrhage" in her left eye and told her she might need to have surgery.

69.     On or around April 25, 2019, Ms. Perez's doctor examined her eye and instructed her to take time off from work beginning that day. He provided her with a note stating that her condition hindered her from performing daily activities. It also stated that she was unable to return to work on that date and requested that Ms. Perez be provided time off, noting that Ms. Perez would need to undergo surgery if her condition did not improve in one week.

70.     On or around that day, Ms. Perez approached Ms. Osorio to discuss her need for time off and her upcoming surgery and recovery. Ms. Osorio said to Ms. Perez words to the effect that she would give her two weeks, and that if Ms. Perez did not return after two weeks, Ms. Osorio could not keep her job open.

71.     Ms. Perez was unsure that she could return after two weeks, but she was worried about keeping her job, and was hopeful that her recovery would go well. She decided to have her surgery and discuss more with Ms. Osorio afterwards, in the hopes that she could keep her job.

72.     Ms. Perez's eye did not improve, and she underwent surgery on her left eye on or around April 28, 2019.

73.     Unfortunately, the surgery was not successful. On or around May 2, 2019, while she was still in recovery for her left eye, Ms. Perez's doctor informed her that she would need surgery on her right eye. He scheduled her for her second surgery on May 6, 2019 and provided her with a note verifying the need for that surgery.

*Defendants Fire Ms. Perez When She Informs Them of Her Need for Additional Medical Leave*

74.     When Ms. Perez learned that she would need a second surgery, she decided to visit Sunrise Medical to speak with Ms. Osorio and Dr. Martinez.

75.     At that point Ms. Perez was scared that she was going to lose her job, because of Ms. Osorio's earlier insistence that she return to work after two weeks.

76.     On or around May 3, 2019, she visited the Sunrise Medical office to speak with Ms. Osorio and Dr. Martinez. She wanted to ask them for paperwork so that she could apply for Short Term Disability benefits. She also wanted to ask for missing pay from her last paycheck.

77.     When she arrived, Dr. Martinez was with a patient, so she spoke with Ms. Osorio.

78.     Ms. Perez first told Ms. Osorio that she was missing 16 hours of pay from her last paycheck. Ms. Osorio responded that the punch clock had not registered Ms. Perez's departure, only her arrival. She told Ms. Perez that if she didn't punch in, she would not be paid, and reminded her about the punch clock memorandum. Ms. Perez reminded her that she had financial obligations, including a babysitter that she had to pay.

79.     Ms. Perez then gave Ms. Osorio her May 2, 2019 doctor's note and explained that she had an additional surgery coming up on the following Monday, May 6, 2019.

80.     Ms. Perez also told her that she thought it was unfair that Ms. Osorio was offering her only two weeks of leave without pay, and that she would lose her job after that.

81.     In addition, she told Ms. Osorio that she believed Sunrise Medical provided her with some kind of disability coverage, and wanted to know more. Ms. Osorio responded that she had been telling Ms. Perez all year to "go to Social Security" and apply for disability benefits. Ms. Perez told her that she was referring to a different type of benefit, but Ms. Osorio refused to give her any information.

82.     Ms. Osorio became irate and told Ms. Perez that she should just go out and get food stamps, because "this is not a church to seek charity."

13

83.     By this point in the conversation Ms. Perez understood she was being fired and asked for a termination letter. Ms. Osorio told her to go speak with Dr. Martinez.

84.     Ms. Perez became emotional and started to cry. She left Ms. Osorio's office and went downstairs to find Dr. Martinez.

85.     When Ms. Perez started to explain to him that she needed paperwork to apply for Short Term Disability benefits, Dr. Martinez responded with words to the effect of "Don't tell me anything, I already know; you need to go find the papers and I'll sign." When she started to explain to him that she wasn't sure where to get the paperwork, he cut her off and started yelling at her, saying words to the effect of "I don't know, the only thing that I know is that you can't return to work, you can't take blood, you can't work on the computer, and you can't do anything."

86.     He concluded by telling her he would certify her as disabled himself.

87.     Ms. Perez left Sunrise Medical in tears and feeling anguished at having been fired because of her disability.

88.     That was the last time Ms. Perez spoke with Ms. Osorio or Dr. Martinez.

89.     In the aftermath of her termination, Ms. Perez experienced depression and anxiety, and felt humiliated by the manner in which she was terminated. She continues to feel that way when she thinks about how Defendants treated her.

*Defendants' Failure to Comply with Relevant Employment Laws and Regulations*

90.     Defendants failed to communicate to Ms. Perez, verbally or in writing, any information about her rights under the NYCHRL or any other anti-discrimination laws.

91.     Defendants failed to maintain any displays or postings on Sunrise Medical's premises informing employees of their rights under the NYCHRL or any other discrimination laws.

92.     Defendants failed to maintain any displays or postings on the premises of Sunrise Medical informing employees of their rights under state or federal wage and hour laws.

93.     Defendants failed to inform Ms. Perez of her right to be paid for every hour worked, or of her right to be paid overtime pay for hours worked over forty in one week.

94.     Defendants, as a matter of policy, refused to pay Ms. Perez for any work hours completed over forty in one week, nor did they pay her an overtime premium of one-and-a-half times her regular pay rate for work hours in excess of forty hours in one week.

95.     Defendants, as a matter of policy, refused to pay Ms. Perez for hours worked when she was unable to punch in.

96.     Defendants failed to provide Ms. Perez with a written hiring statement within ten days of her hiring, or with accurate wage statements listing information such as her overtime rate of pay or hours worked in each pay period.

97.     Defendants were aware that the wage and hour laws required them to pay their employees for all hours worked, and to pay overtime wages for all hours worked over forty in a week. In fact, Defendants had been sued for wage violations in the past and had been the subject of investigations by the New York State Department of Labor. Still, Defendants failed to pay Ms. Perez as required by wage and hour laws.

98.     Upon information and belief, Defendants knowingly, intentionally, and willfully committed the acts alleged herein.

15

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Unpaid Overtime Wages)**
**(Fair Labor Standards Act, 29 U.S.C. §§ 201,** *et seq.***)**

99.     Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

100.     Defendants failed to pay Ms. Perez overtime wages for hours worked in excess of forty hours per week at a rate of one-and-a-half times her regular rate of pay, in violation of 29 U.S.C. § 207(a)(1).

101.     As a result of those violations, Ms. Perez is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, all in the amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Unpaid Minimum Wages)**
**(New York Labor Law § 652(1); 12 New York Codes, Rules and Regulations §§ 142-2.1,**
**2.10)**

102.     Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

103.     Defendants failed to pay Ms. Perez the applicable hourly minimum wage for all hours worked in violation of New York Labor Law § 652(1) and applicable regulations. As a result of those violations, Ms. Perez is entitled to recover from Defendants, jointly and severally, her unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of this action, all in an amount to be determined at trial.

16

## THIRD CAUSE OF ACTION
### (Unpaid Overtime Wages)
### (New York Labor Law § 652; 12 New York Codes, Rules and Regulations § 142-2.2)

104.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

105.    Defendants failed to pay Ms. Perez overtime wages for hours worked in excess of forty hours per week at a rate of one-and-a-half times her regular rate of pay or the minimum wage to which she was entitled to receive under the New York Labor Law and applicable regulations. As a result of those violations, Ms. Perez is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, all in the amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Failure to Pay Wages Earned and Due)
### (New York Labor Law Article 6, §§ 190 *et. seq.*)

106.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

107.    At all material times Ms. Perez was an employee entitled to the protections of Labor Law Article 6, including §§ 190, 191, 193, 195, 198(1-a) and 198(3).

108.    Wages are defined in New York Labor Law § 190(1) as the "earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."

109.    Defendants deprived Ms. Perez of part of her earned and due wages by failing to pay her earned and due wages for all hours she worked beyond forty in one week throughout her

17

employment. In addition, Defendants deprived her of wages earned and due by failing to pay her for 16 hours of work in her last pay period prior to being fired.

110.    As a result of these violations, Defendants are liable to Ms. Perez for the value of those wages, together with liquidated damages and attorney's fees under the above-referenced provisions of Labor Law Article 6. *See, e.g.*, *Griffith v. Coney Food Corp.,* No. 19-CV-1601 (NGG) (JO), 2020 U.S. Dist. LEXIS 148099, at *16-17 (E.D.N.Y. Aug. 17, 2020).

**FIFTH CAUSE OF ACTION**
**(Failure to Provide Hiring Notice)**
**(New York Labor Law § 195(1))**

111.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

112.    Defendants failed to furnish to Ms. Perez with a notice within ten days of hiring, that contained information about her rate of pay and basis thereof, along with other legally required information.

113.    As a result of those violations, Ms. Perez is entitled to recover from Defendants, jointly and severally, statutory penalties of $50 per workday for each day Defendants failed to provide such a notices, up to $5,000, together with reasonable attorney's fees, costs of the action, and pre-judgment interest, all in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Failure to Provide Accurate Wage Statements)**
**(New York Labor Law § 195(3), 12 NYCRR § 142-2.7)**

114.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

115.    Defendants failed to furnish Ms. Perez with an accurate statement with every payment of wages, listing, among other information Ms. Perez's regular and overtime hours worked, and overtime rate of pay.

116.    As a result of those violations, Ms. Perez is entitled to recover from Defendants, jointly and severally, damages of $250 for each work day that the violations occurred or continued to occur, up to $5,000, together with reasonable attorney's fees, costs of the action, and pre-judgment interest, all in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Unlawful Disability Discrimination: Failure to Engage in Cooperative Dialogue)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.*)**

117.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

118.    Section 8-107(28)(a) of the New York City Human Rights Law required that Defendants engage in a cooperative dialogue with Ms. Perez within a reasonable time once she requested an accommodation or once they were on notice that she might require such an accommodation. Defendants were obligated to engage in a cooperative dialogue independently of their related obligation to provide a reasonable accommodation to Ms. Perez pursuant to N.Y.C. Admin. Code § 8-107(15).

119.    Defendants failed to do so by, among other things, failing to communicate in good faith with Ms. Perez concerning her need for an accommodation, and failing to notify her in writing of their determination regarding her requested accommodation.

120.    By the acts and practices described above, Defendants unlawfully discriminated against Ms. Perez because of her disability in violation of the New York City Human Rights Law.

121.     As a result of those violations, Ms. Perez is entitled to recover from Defendants compensatory damages, punitive damages, costs, and reasonable attorney's fees, all in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Unlawful Disability Discrimination: Failure to Accommodate)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(15))**

122.     Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

123.     Section 8-107(15) of the New York City Human Rights Law makes it an unlawful discriminatory practice for an employer not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of the a job, provided that the disability is known or should have been known by the employer.

124.     Defendants knew of Ms. Perez's disability and unreasonably failed to provide a reasonable accommodation to her, despite her request for the reasonable accommodation of time off from work to recover from her eye surgery.

125.     By the acts and practices described above, Defendants unlawfully discriminated against Ms. Perez because of her disability in violation of the New York City Human Rights Law.

126.     As a result of those violations, Ms. Perez is entitled to recover from Defendants compensatory damages, punitive damages, costs, and reasonable attorney's fees, all in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Unlawful Disability Discrimination: Interference with Protected Rights)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(19))**

127.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

128.    Section 8-107(19) of the New York City Human Rights Law prohibits an employer from coercing, intimidating, threatening, or interfering with employees in their exercise or enjoyment of any right granted or protected under the NYCHRL.

129.    By the acts described above, including by discouraging Ms. Perez from taking time off for medical leave, threatening her job if she did not return within two weeks of her eye surgery, and firing her upon her request for additional medical leave and her request for information about her rights to disability benefits, Defendants unlawfully interfered with Ms. Perez's rights under the NYCHRL.

130.    As a result of those violations, Ms. Perez is entitled to recover from Defendants compensatory damages, punitive damages, costs, and reasonable attorney's fees, all in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Unlawful Disability Discrimination: Retaliation)**
**(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7))**

131.    Ms. Perez realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

132.    Section 8-107(7) of the New York City Human Rights Law prohibits an employer from retaliating or discriminating against an employee in any manner because the employee complained of discrimination.

133. By the acts described above, including by firing Ms. Perez on the day she requested additional medical leave and information about her rights to disability benefits, Defendants unlawfully retaliated against Ms. Perez in violation of the NYCHRL.

134. As a result of those violations, Ms. Perez is entitled to recover from Defendants compensatory damages, punitive damages, costs, and reasonable attorney's fees, all in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request this Court enter a judgment:

1. Declaring Defendants' acts, practices, and omissions complained of herein to be in violation of Ms. Perez's rights under FLSA, NYLL, and NYCHRL;

2. Directing Defendants to pay Ms. Perez unpaid wages under the FLSA and NYLL;

3. Directing Defendants to pay Ms. Perez liquidated damages under the FLSA and NYLL and statutory damages under the NYLL;

4. Directing Defendants to pay Ms. Perez back pay, front pay, and compensatory damages including damages for emotional distress under the NYCHRL;

5. Directing Defendants to pay Ms. Perez punitive damages sufficient to punish and deter continuation of Defendants' unlawful employment practices under the NYCHRL;

6. Awarding Ms. Perez reasonable attorney's fees, costs, and expenses as provided by law under the FLSA, NYLL and NYCHRL; and

7. Awarding such other legal and further relief that this Court deems necessary, just, and proper.

Dated:    New York, New York
          September 1, 2020

22

YOURS,

**BETH E. GOLDMAN, ESQ.**
New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, NY 10004
Tel: (212) 613-5000

Anamaria Segura, of Counsel

*Attorneys for Plaintiff*

# Exhibit A

MEMO

From: SERGIO A. MARTINEZ, MD ,

LUCY OSORIO, LCMSW,

To:  A. Silvia Lozano, Kateri  Fernandez,  Samantha Jaramillo  and Ana Perez.

Re: Punching  Clock

DATE: February 6, 2019

As you are well aware that **SUNRISE MEDICAL** policy require that all above employees **MUST** punch **IN (1)** first thing in the morning **(9 AM)** as soon as you get to work, you are require to punch **OUT  (2)** at the end of the day **(5 PM)**.

Upon receiving of the punching **IN (1)** records, we see that most of you are **NOT FOLLOWING** the requirements and procedures that we are addressing for the past 2 years.

This is very  necessary for us to make sure each of you are pay  the correct salary  that you are in title to receive.

Effective after this payroll any employee that fail or missing any punching **WON'T** be paid for the day or the or the hours you are missing.

All employees are demanded to work no more than 40 hours per week or 80 hours per payroll and take **30** mts lunch every single day, if you don't do it the  system do the adjustment for your lunch.

Thank you to all of you for your cooperation and support to make this possible.

+